HARTWIG N. BARUCH, Respondent, *v.* RICHARD W. BUCKLEY, Defendant, Impleaded with JAMES H. STACK, Appellant.

First Department, February 19, 1915.

Bills and notes — accommodation indorsement — agreement that maker shall obtain additional indorsement — negotiation in violation of condition — rights of holder in due course as against conditional indorsee — evidence — purchase of note without knowledge that indorsement is conditional — principal and agent — knowledge of agent — failure to stop payment on draft which was part of consideration for transfer.

Where the defendant indorsed a note for the accommodation of the maker on the condition that it was not to be used or negotiated unless another indorser were obtained, but it was transferred by the maker in violation of the condition to a person who was a holder in due course, having no knowledge of the condition on which the indorsement was made, the defendant is liable.

In determining whether any notice of the condition was given to the transferee during the course of the transfer, notice given to his agent must be imputed to him, where there is no claim of collusion between the agent and the maker to defraud the transferee.

The fact that the agent of the transferee knew that the maker was in impecunious circumstances was not enough to place him upon inquiry as to the nature of the indorsement, where he knew the indorser to be a person of financial responsibility.

Where the agent of the transferee had no knowledge of the condition on which the indorsement was made until informed thereof by the indorser the day after the note was negotiated to his principal, and before that time, on behalf of his principal, had paid the transferror in cash and by a draft drawn upon a foreign bank to the transferror's order, said draft being purchased by the agent for cash, the transferee is not chargeable with knowledge of the condition of the indorsement so as to defeat a recovery against the indorser.

Nor does the subsequent failure of the holder's agent to stop payment of the draft after notice that the condition of the indorsement had been violated defeat a recovery, for the draft was not the draft of the transferee but drawn to the order of the transferror by a bank upon the payment to it of sufficient funds, whereby the bank entered into direct obligation with the transferror and there remained no power either in the holder or his agent to stop payment.

But the balance of the consideration for the transfer which was not paid over to the transferor until after notice that the condition of the indorsement had been violated cannot be recovered by the holder, for as to that amount he was not a holder in due course.

APPEAL by the defendant, James H. Stack, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 7th day of January, 1914, upon the decision of the court after a trial at the New York Trial Term, a jury having been waived.

*Hector M. Hitchings,* for the appellant.

*Robert L. Redfield,* for the respondent.

Judgment affirmed, with costs, on opinion of PAGE, J.

Present — INGRAHAM, P. J., McLAUGHLIN, LAUGHLIN, CLARKE and SCOTT, JJ.

The following is the opinion of the court below:

PAGE, J.:

This is an action brought by the plaintiff as holder in due course of a promissory note for $3,000 made by the defendant Richard W. Buckley, payable to his own order, and indorsed by the defendant James H. Stack. Stack alone is defending the action upon the ground that he indorsed the note for the accommodation of Buckley before any date had been placed upon it and delivered the uncompleted note to Buckley upon condition that it should not be negotiated until he had obtained the signature of another good indorser, and that later, before the note was negotiated, he notified Buckley not to use it upon any condition and demanded its return, which Buckley promised to do. He alleges that Buckley, contrary to his express instructions, filled in the date of the note and negotiated it to the plaintiff, who, he alleged, had full knowledge of the facts and of the infirmity of the note. Upon the trial it appeared that Buckley took the note to one Richard Lydon, an attorney, and requested him to cash it in order to enable Buckley to consummate a business transaction in Mexico. Buckley went with Lydon to see the plaintiff, a client of Lydon's, and Lydon persuaded the plaintiff to cash the note, assuring him that Stack, the indorser, was a responsible man. The plaintiff directed Lydon to cash the note for Buckley out of funds belonging to the plaintiff, which were then in Lydon's possession. Lydon drew $2,540 of the plaintiff's money from

the bank, and at Buckley's request gave to Buckley $540 in cash and obtained a draft upon a Mexican bank for $2,000, which Buckley took with him and departed for Mexico, receiving before he left Lydon's promise to send him $460, the balance of the purchase price of the note, by money order to Mexico whenever Buckley should request it. On the afternoon of this day Lydon wrote a letter to Stack informing him that the note had been negotiated to the plaintiff, his client. The next day Stack telephoned Lydon and told him that he had indorsed the note and delivered it to Buckley on condition that it should not be used without another indorser. Stack says that he also told Lydon he had instructed Buckley not to use the note at all. This is denied by Lydon. No attempt was made to stop payment of the draft which Buckley had taken with him, and some time later, at Buckley's request, Lydon sent him $460, the balance due on the note. No notice of any of these facts was ever given to the plaintiff in person. On the due date the note was not paid and was protested, and due notice of protest given to the defendant Stack. The maker or indorser of negotiable paper has the right to impose limitations restricting its use, and any one who takes it, with full knowledge that it has been diverted from the use or condition under which it was delivered, cannot recover upon it. (*Benjamin* v. *Rogers*, 126 N. Y. 60; *United States Nat. Bank* v. *Ewing*, 131 id. 506.) The note in suit was delivered to Buckley upon condition that it should not be used unless another indorser were obtained. It was negotiated in violation of that condition. The principal question, therefore, is whether the plaintiff had or was chargeable with notice of the condition before the consideration for the note had been paid. In determining this question any notice which was given to Lydon during the course of the transaction must be imputed to the plaintiff, for Lydon was the plaintiff's agent both in accepting the note and paying the consideration, and there is no claim of collusion between him and Buckley for the purpose of defrauding the plaintiff. The note was regular upon its face and the genuineness of the indorsement was admitted. The fact that Lydon may have known of Buckley's impecunious circumstances was not enough to place him upon inquiry as to the nature of the

indorsement, for a man is entitled to rely upon an indorser whom he knows to be good even though the instrument be presented by or payable by or to one who is in poor circumstances, and no special duty to inquire into the conditions of its delivery is created by that fact. There is nothing in the case to charge Lydon or the plaintiff with knowledge of the condition upon which the note was indorsed until the telephone message between Stack and Lydon the day after the note was negotiated, in which Stack informed Lydon that the note was not to be used by Buckley until after he had obtained another indorser. At the time when Lydon received this notice he had given to Buckley $540 in cash and a draft of the National Bank of Commerce for $2,000, drawn upon a Mexican bank to the order of R. W. Buckley. This draft was obtained by paying $2,000 in cash to the Fulton Trust Company of New York city, who in turn obtained the draft from the National Bank of Commerce. It is claimed on behalf of the defendant that there was ample time for Lydon to stop payment of the draft and he was under a duty so to do upon learning of the infirmity in the note. It is conceded that no attempt to stop payment was made. Had the instrument been an ordinary one drawn by the plaintiff or his agent upon a bank in New York or elsewhere their duty to do all within their power to stop payment upon it after receiving notice of the diversion would have been clear. (*Crandall* v. *Vickery*, 45 Barb. 156.) But the draft issued to Buckley was not their draft. It was drawn by the National Bank of Commerce to Buckley's order upon payment to it of sufficient funds. The bank entered into a direct obligation to Buckley, and there remained no power in either Lydon, the plaintiff, or the Fulton Trust Company to stop payment of the draft. The law will not require of a man that which he has no power to perform. I am constrained to hold, therefore, that upon the delivery to Buckley of the $540 cash and the draft of $2,000 the plaintiff had made an irrevocable payment to the extent of $2,540 toward the agreed consideration of $3,000, and to that extent he is a *bona fide* purchaser for value without notice of the diversion of the note by Buckley, and is entitled to recover the amount so paid, with interest. It is clearly established, however, that after receiving notice from

Stack of Buckley's diversion, the plaintiff's agent, Lydon, caused to be issued an express money order to Buckley for $460, the balance of the agreed consideration. As this payment was made after notice of the infirmity plaintiff cannot recover it. Judgment for plaintiff for $2,540, with interest. Settle findings in accordance with this memorandum. Order signed and ordered on file.