[No. 28995. Department One. June 29, 1943.]

ASA B. WILSON *et al.,* *Respondents,* v. THE CITY OF ABERDEEN *et al., Appellants.*[1]

[1]Reported in 139 P. (2d) 636.

*A. D. Gillies,* for appellants.

*A. E. Graham,* for respondents.

MALLERY, J.—Plaintiffs brought this action against the city of Aberdeen to quiet the title in themselves to certain property in the city as against the liens of certain local improvement district assessments. From a judgment for plaintiffs, the defendant city of Aberdeen appeals.

At a county tax sale in 1917, the property involved in this action was bid in by and conveyed to one Murphy, who in turn sold and conveyed it to plaintiff Asa B. Wilson. Mr. Wilson thereafter reconveyed the property to Mr. Murphy. On January 13, 1919, Mr. Murphy sold the property to Grays Harbor county and conveyed it to the county by warranty deed "subject to taxes and assessments."

In December, 1940, at a sale of county owned property, some of which was acquired by the county for taxes, the property here involved was bid in and purchased by the plaintiffs, and a county treasurer's deed was issued to plaintiffs, containing a clause reading as follows:

"The above described real estate will be sold subject to the lien of any or all local assessments falling due after the date of this sale, or of any or all drainage or sewerage improvement district assessments outstanding against said real estate."

Both before and after the county acquired the property, the city of Aberdeen created local improvement districts, in which the property was included, and

assessments were regularly levied against it. The last installment on any of the assessments became delinquent September 20, 1931, so that more than ten years had elapsed before the commencement of this action in the superior court on October 14, 1941. Grays Harbor county paid none of the local improvement district assessments.

■ The court held, in *Gengler v. King County,* 12 Wn. (2d) 227, 121 P. (2d) 346:

" . . . (1) that county land acquired through foreclosure of general tax liens is subject to local improvement assessment liens which attach during the time that the county has title; (2) that local improvement assessment liens attaching *subsequent* to county acquisition are not extinguished on resale, notwithstanding the fact that local improvement assessment liens attaching to property *prior* to county acquisition from a general tax foreclosure are extinguished by a resale; (3) that local improvement assessment liens on county land attaching subsequent to acquisition must be paid either (a) by the county from the proceeds of the sale of such property, or (b) by selling the property subject to the lien of such assessment; and (4) that this holding concerns only Rem. Rev. Stat., § 9342, and has no reference whatsoever to Rem. Rev. Stat., § 9393."

Therefore, unless the assessments are barred by the statute of limitations (Rem. Rev. Stat., § 9394 [P. C. § 1029]), the plaintiffs took the property in question subject to local improvement assessments becoming due after the county acquired the property by deed.

In *Bale v. Floyd,* 199 Wash. 503, 91 P. (2d) 1025, in which a county defended the action in its governmental capacity, this court said:

"The courts are practically unanimous in holding that the statute of limitations does not begin to run against the holder of a municipal warrant until the cause of action accrues, and the cause of action does not accrue until the treasurer has given notice of his readiness to pay the warrants, or the holders had such notice as would enable them to present the warrants to the trea-

surer for payment, and there has been money in the fund with which to pay them."

However, where the property is held by the county in its proprietary capacity, a different rule with regard to the statute of limitations applies. *Commercial Waterway Dist. v. King County,* 10 Wn. (2d) 474, 117 P. (2d) 189, was a case where the county acquired certain land in its governmental capacity by tax foreclosure proceedings and later converted it to its proprietary use by using it for an airport. This court said:

"Concededly, the county held the land, which was acquired by purchase at tax sale for want of another purchaser, in a governmental capacity as distinguished from a proprietary capacity; therefore, the statute of limitations is not a defense. No step in the tax collecting process is subject to the defense of the statute of limitations. *Gustaveson v. Dwyer,* 83 Wash. 303, 145 Pac. 458; *Home Owners' Loan Corp. v. Tacoma,* 4 Wn. (2d) 166, 102 P. (2d) 832."

That case further held that the commercial waterway district's action to collect the assessments from the county would lie, because the county was then holding the land in its proprietary capacity, and that the statute of limitations had not run, because "There is an utter lack of evidence to support the finding that appellants had knowledge of the adoption of the resolution establishing the airport."

Applying the rules of the above-cited cases to the facts of the instant case, we find that the assessments falling due while the property was held by the county were not abated. When the county acquired the land by deed from Murphy, it held it in its proprietary capacity, as distinguished from an acquisition by tax foreclosure proceeding where it acts as tax collecting agency for the other governmental units. The recording of the deed was notice to the world that it held the land in its proprietary capacity. Thereupon, the statute of limitations began to run, and any action

to collect these local improvement district assessments was barred at the time this suit was commenced.

The judgment is affirmed.

SIMPSON, C. J., MILLARD, STEINERT, and JEFFERS, JJ., concur.

